THE STATE OF KANSAS, *ex rel.*, v. F. M. SE-
CREST *et al.*

No. 11257.

· 1. SCHOOL DISTRICTS—*Jurisdiction of Board of County Com-
missioners.* The power of the board of county commissioners to
hear and determine appeals from the decision of the county su-
perintendent as to the formation or alteration of school districts
is special and limited, and must be exercised strictly on the con-
ditions under which it is given.

2. ———— *Rehearing by Board of County Commissioners.*
When the appeal is heard and decided, and the board adjourns
till the following month, the parties interested in the appeal have
a right to infer that the decision is final, and the board is not au-
thorized to take up and rehear the appeal at the following meet-
ing without notice.

3. ———— *Jurisdiction of Board of County Commissioners.*
In such appeals the board has no original jurisdiction; its only
function is to determine whether the decision of the county su-
perintendent shall be sustained. It has no authority to form dis-
tricts for which application has not been made to the county
superintendent, nor can it make alterations not considered by
that officer or embraced within his decision.

Original proceedings in *quo warranto.* Opinion filed
June 10, 1899. Judgment for plaintiff.

' *A. A. Godard,* attorney-general, *E. H. Gamble,* and
*Benson & Smart,* for plaintiff.

· *John W. Deford,* for defendants.

The opinion of the court was delivered by

JOHNSTON, J. : This is a proceeding in *quo warranto,*
brought in the name of the state by the attorney-gen-
eral, to test the validity of a school-district organiza-
tion in Franklin county.

A petition was presented to the county superintend-
ent asking for the formation of a new district out of
specified territory contained in districts Nos. 4 and 50.

41—60 KAN.

Upon giving legal notice a hearing was had before the county superintendent on January 31, 1898, when the petition was refused, the reasons therefor being stated at length in writing. From this decision an appeal was taken to the board of county commissioners, and on April 30, 1898, and after a full hearing of the parties interested and a conference with the county superintendent, the board denied the appeal and sustained the action of the county superintendent. No further action was taken in the matter until June 25, 1898, when the board, without notice to the parties concerned, granted a rehearing of the appeal. This action was taken upon the petition of one person, but notice of the filing of the same was not served upon the county superintendent, nor on any officer of the school districts affected, nor was any public notice thereof given. Several meetings of the board, regular, special, and called, were held between April 30, when the appeal was denied, and June 25, when a rehearing was granted, but at none of those meetings was any action taken on the matter, and the decision denying the appeal was treated as a finality. On July 2, 1898, the board again considered the matter, and assumed power to reopen the case and sustain the appeal, granting the petition so far as it affected district No. 4, but denying it so far as it affected district No. 50. It appears that after the county superintendent's decision had been made and an appeal taken, and while the petition was in the office of the county clerk, it was changed so far as to exclude from the proposed new district a part of the territory, including one-half mile of railroad that would have been in the district had the original petition therefor been granted. After the action of the board purporting to create a new district was had, the county superintendent gave notice

of its action and of a meeting to elect officers therein. At that meeting the defendants were elected as district officers, and were assuming to discharge the functions and duties of such officers when the present proceeding was begun.   Did the board have power to create a school district when it had taken final action on the appeal two months before, and when the petition and proposition upon which it acted were not the ones considered by the county superintendent, and which formed the basis of the decision from which the appeal was taken?

The power to hear and determine an appeal is exceptional jurisdiction, quite unlike that exercised by the board in the purchase of supplies, the allowance of claims, or the administration of the ordinary business and monetary affairs of the county.   The time and manner of taking up and disposing of the current business are largely left to the discretion of the board, and hence little restriction is imposed as to the time and circumstances under which matters may be reconsidered or reheard by it.   The power to act as a reviewing tribunal, however, is special and limited, and one which must be exercised strictly upon the conditions under which it is given.   In the formation and alteration of school districts the board has no original jurisdiction.   That belongs alone to the county superintendent.   The only function of the board in that regard is to determine whether or not the decision of the county superintendent shall be sustained.   It acts in conference with the county superintendent, and only after written notice shall have been given to the county superintendent and the clerks of all the districts affected by the alteration. (Gen. Stat. 1889, ¶ 5581; Gen. Stat. 1897, ch. 63, § 3.)   In such appeals the statute requires promptness and dispatch, and makes

early and final action obligatory upon the board and county superintendent. This is manifest by the statutory provision that the appeal shall be heard and decided at the next regular meeting of the board after it is taken, and that the decision then made shall be final.

In this case, when the decision was made on April 30, 1898, denying the appeal and sustaining the action of the county superintendent, the parties interested had a right to infer that a final disposition had been made of the matter, and especially after the board adjourned until May 26. Several meetings intervened between the action denying the appeal and the reopening of the case on June 25, but at none of these meetings was any action taken in or reference made to the appeal. It therefore stood and was treated as a finality for a long time, and when action was subsequently taken it was without notice. If a rehearing may be had after the adjournment of the meeting at which the decision is made, it must be on due notice to the interested parties. Notice was essential to a hearing of an appeal in the first instance, and certainly the controversy cannot be reopened and reheard after what appears to have been a final decision of the case without giving interested parties an opportunity to be heard.

Another objection, and perhaps a more serious one, is that the board heard a different application than the one presented to the county superintendent, and reviewed a case that was not heard and decided by that officer. It appears that, after the original application and papers had been filed in the office of the county clerk, the petition as originally filed was changed so as to exclude from the boundaries of the proposed district quite an extent of territory, being all of the territory proposed to be taken from district

No. 4. It thus appears that the board assumed to exercise original jurisdiction by creating a district which the county superintendent had never been asked to create, and of the proposed formation of which no notices were ever posted. It is contended that the petition is not expressly provided for in the statute, and therefore that the contents of the same are unimportant. No express provision is made for a petition to the county superintendent, but written notice of the proposed change of districts is specifically required, and therefore the statute plainly contemplates that a petition shall be made for the proposed change, and this is the basis of the notice given by the county superintendent. Considerable discretion is vested in the county superintendent in changing the boundaries of districts, but the board has no original jurisdiction in that respect, nor any power except to determine whether or not the action of the county superintendent shall be sustained. No authority is given by which the board may form districts for which no application has been made, nor can it make alterations in the boundaries of districts not considered by or embraced within the decision of the county superintendent. No application had ever been made to the county superintendent for such an alteration as was made, or for a district with the boundaries fixed by the board, and no notice had ever been given of the proposed organization of such a district. The board was, therefore, attempting to exercise original jurisdiction not conferred on them by law, and for the reasons stated their action is null and void. The organization being illegal, the defendants were not entitled to the offices claimed by them, nor to the authority which they assumed to exercise.

A judgment of ouster will go in accordance with the prayer of plaintiff's petition.