No. 31,435

THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, Attorney-general, *Appellant*, v. MINNIE CONLEY, County Superintendent; THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF PHILLIPS et al., *Defendants*; JOHN C. KATS, *Appellee*.

(28 P. 2d 744.)

Opinion filed January 27, 1934.

*Roland Boynton*, attorney-general, *W. C. Ralston*, assistant attorney-general, *W. A. Barron*, of Phillipsburg, and *W. S. Rice*, of Smith Center, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to determine the validity of an order made by the board of county commissioners purporting to create new school districts.

From an order overruling plaintiff's demurrer to an answer filed by one of the defendants, the plaintiff appeals.

The petition alleges the personnel of the board of county commissioners and of the school district board; that prior to 1921 school district No. 12 contained certain described real estate, had maintained a graded common school and a high school and in 1921 had erected and purchased buildings and equipment valued at $20,000 and located in the city of Long Island, which is a third-class city; that in 1921, under proceedings duly had, school district No. 20 and school district No. 88, whose territorial content is described, consolidated with school district No. 12, and all three became one consolidated school district known as Long Island consolidated school; that later, in 1923, school district No. 101, whose territorial content is described, was consolidated with and became a part of Long

Island consolidated school; that at all times since the first consolidation the district has maintained a graded school and a fully accredited class B high school, having the highest rating given that sized high school; that the district has erected and purchased additional buildings and equipment costing about $25,000 and has outstanding bonds amounting to $9,500; that it maintains a bus system for transportation of pupils; that in 1931 it had an assessed value for taxation of $812,516, received $4,000 for tuition from outside pupils, and levied taxes of $17,000 in addition thereto, and that it would require a total tax of $13,000 for the school year 1932-'33; and that it had four teachers in the grade school and a pupil attendance of about seventy-eight, and five teachers in the high school and a pupil attendance of about sixty-four. The petition further alleged that a petition was filed by some property owners praying that the district be disorganized and dissolved and that out of its territory new districts be formed. A copy of the petition is attached as an exhibit and shows that if granted, four new districts would be formed, whose territorial content, in each case, would be as follows: Original district No. 20 would be completely restored. Original district No. 88 would be completely restored and twenty acres from outside the limits of the present consolidated district would be added to it. The south 1,280 acres of original district No. 12 would be added to original district No. 101, and, as thus altered, the two original districts would be completely restored.

The county superintendent, after giving due notice, held a hearing and ultimately denied the petition. An appeal was taken to the board of county commissioners, which ordered the new districts created. One commissioner voted to sustain the county superintendent, and the two others, hereafter referred to, voted to overrule her decision and to grant the prayer of the petition.

The petition also sets up that a consolidated district was likewise formed in another part of the county; that one of the commissioners lived in one of these districts, another in the other district, and that the two commissioners assisted in the preparation of the petitions to dissolve both consolidated districts, and conspired together to grant said petitions regardless of the vote of the other commissioner or of the decision of the county superintendent, and that in acting upon said petition involved herein they acted in bad faith, arbitrarily, in a capricious and prejudicial manner, from selfish motives and without regard to the best interests of the in-

habitants of the consolidated district. The facts upon which such conclusions are based are pleaded, but in view of the question involved in this appeal it is not necessary that they be further set out. On the same day the petition was filed an order was issued restraining further proceedings dividing up the consolidated school-district territory. None of the parties defendant filed answers, but seventy-four days after the filing of the petition and the granting of the restraining order, one John C. Kats, on permission, filed an unverified answer on behalf of himself and the other taxpayers who originally instituted the proceedings, in which he admitted among other things that the petition to create the new districts was filed; that a hearing was had before the county superintendent and an appeal taken to the board of county commissioners which overruled the decision of the county superintendent and granted the request of the petitioners, and denied all other allegations of the petition.

To this answer the plaintiff demurred, which demurrer the court overruled, the journal entry reciting "the court finds . . . the board of county commissioners of Phillips county, Kansas, had jurisdiction to make the order complained of, . . ." From this ruling plaintiff promptly appealed, the error specified being the overruling of the demurrer.

The power of the board of county commissioners to overrule the decision of the county superintendent denying the petitions for the establishment of new districts and to order such districts established has been determined by this court. (State, ex rel., v. School District, 112 Kan. 60, 209 Pac. 974; State, ex rel., v. Cannon et al., 116 Kan. 325, 226 Pac. 777.)

In the last mentioned case the facts are quite like those here involved. In that case it appeared several districts united as a union school district. Trouble arose and petitions were filed for the creation of four new districts out of the territory of the union district. The county superintendent allowed the petitions as to two districts and denied it as to two others. On appeal the board of county commissioners sustained the county superintendent as to the districts created and overruled him as to those denied, and ordered them created. An appeal was taken to this court, and, in disposing of it, it was said:

"The first contention is that in the organization of new districts the county superintendent is not authorized to form them from territory of a consolidated

district. A consolidated district is no more than an enlarged school district, and it has been determined that the county superintendent in organizing a new district may form it from territory which is embraced in a consolidated district. (*The State, ex rel., v. School District*, 112 Kan. 60, 209 Pac. 974.) It is argued that the instant case is distinguishable from the one cited, as the action taken by the county superintendent practically and seriously impairs the efficiency of the consolidated district, which had been formed on the authorization of the electors voting and residing therein. It appears that the organization of the new district left considerable territory in the consolidated district, which in fact included all of the territory of old district 100, and no reason is seen why that district may not carry on. The law provides that school districts may be changed by the county superintendent when the educational needs and interests of the inhabitants require it. (R. S. 72-213.) While a consolidated district is organized by the county superintendent after a vote of the people rather than upon the petition of the residents or upon the initiative of the county superintendent, nothing is found in the statute which prevents a change of a consolidated district in the way provided for a change in an ordinary district. Both are school districts, and both may be altered when the best interests of the people will be subserved by a change. The power and discretion to make such organizations and changes is vested in the county superintendent, and in case of an appeal in board of county commissioners." (p. 327.)

That the state alleges facts which, if admitted, would show the action of the board of county commissioners was so arbitrary, oppressive and capricious as to amount to fraud, and sufficient therefore to vitiate its acts, cannot now be considered, for the answer denied those facts. With what remains, we cannot say that it appears the board exercised its powers in an unlawful manner. On the trial of this case on the merits, the doctrine of *State, ex rel., v. Mowry*, 119 Kan. 74, 237 Pac. 1032, might apply, but from the showing made under the facts admitted by the answer, it does not appear that the court erred in overruling the demurrer, and its judgment is affirmed.

HUTCHISON, J., not sitting.