No. 31,435

THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, Attorney-general, *Appellant*, v. (MINNIE CONLEY, County Superintendent; THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF PHILLIPS et al., *Defendants*) JOHN C. KATS, *Appellee*.

(33 P. 2d 165.)

Opinion on rehearing filed June 9, 1934. (For original opinion of affirmance see 138 Kan. 818, 28 P. 2d 744.)

*Roland Boynton*, attorney-general, *W. C. Ralston*, assistant attorney-general, *W. A. Barron*, of Phillipsburg, and *W. S. Rice*, of Smith Center, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to determine the validity of an order of the board of county commissioners purporting to create new school districts, and on the original submission of the appeal the judgment of the lower court was affirmed. (See 138 Kan. 818, 28 P. 2d 744.)

A petition for rehearing was allowed, and the cause is now to be disposed of on the resubmission. In the original opinion is a statement of the facts, to which reference is made. Since the first hearing the parties have stipulated that Phillips county never adopted the Barnes law (R. S. 72-3001 to 72-3022); that the consolidation of districts Nos. 12, 20 and 88 was under provisions of R. S. 72-903 and 72-904 and, following a favorable vote, the old districts were disorganized; that district No. 101 was consolidated with district

No. 12 under provisions of R. S. 72-907, and district No. 101 was disorganized, and that no proceeding was ever had to dissolve the consolidated district, except that complained of in this action.

Appellant contends that the lower court, and this court in its former opinion, did not give sufficient consideration to the fact that the effect of the order of the county commissioners was to dissolve a school district, when such a dissolution was beyond its power.

On the first presentation of the appeal, we were not informed under what act the consolidations were had, nor whether Phillips county operated under the Barnes law. Under R. S. 72-310 districts may consolidate, and under R. S. 72-815, in the conditions therein set forth, they may vote to dissolve. These statutes are not applicable here. At various times the legislature has provided for the disorganization of school districts. Under what now appears as R. S. 72-801 to 72-804, inclusive, the county superintendent has power to disorganize a depopulated district, which is defined to be one having fewer than five legal voters and fewer than seven persons of school age. Under R. S. 72-805 to 72-814, inclusive, upon a sufficient petition therefor being presented, the county superintendent is empowered to disorganize a partially depopulated district, which is defined as one having less than twelve persons of school age. This last act provides machinery for the disorganization and for payment of indebtedness, distribution of assets, etc. R. S. 1933 Supp. 72-818 provides for disorganization on account of failure or neglect to maintain school for specified periods under terms as set out in the statute. Under *State, ex rel., v. Cannon et al.,* 116 Kan. 325, 327, 226 Pac. 777, and *Jackson v. Joint Consolidated School District,* 123 Kan. 325, 327, 255 Pac. 87, it was held that a consolidated-school district is a common-school district. A mere reference to the statement of facts will show that none of these statutes warrants a disorganization of the consolidated-school district, and the districts existing prior to their several unions were dissolved when each united with the consolidated district. Provisions for disorganization of other than common-school districts need not be noticed.

It should here be noted that the petition to change boundaries and create new districts refers to school district No. 12, and the order of the board of county commissioners refers to it as a petition to create new districts out of the territory now forming school district No. 12. Obviously, this is an erroneous reference, for it is stipulated the original school district No. 12 was disorganized when

the first consolidation was made.    Evidently, what was meant was the entire consolidated district.

The petition which initiated the proceedings complained of was addressed to the county superintendent, and under it the petitioners, designating themselves as residents of district No. 12, requested the county superintendent to change the boundaries and territory of the district by dividing said territory into four school districts, and suggesting the boundaries thereof.    Our former opinion compares the boundaries of the original districts, which consolidated, with the boundaries of the new districts.    The county superintendent, in writing, denied the petition, assigning as reasons that in her judgment it was not for the best educational interests of the schools to divide the consolidated district into four new districts; if done, the consolidated district would lose its identity, or, in other words, be disorganized; and that there was no statute authorizing disorganization.    As was noted in our former opinion, on appeal a majority of the board of county commissioners voted to overrule the county superintendent and to grant the prayer of the petition.

The state's demurrer to the answer of the only defendant not in default raised the question of the right to create new districts out of the old district.

In 1876 a comprehensive school law was enacted (Laws 1876, ch. 122).    Under section 13 of article II of the act, it was the duty of the county superintendent to divide the county into a convenient number of school districts and to alter them when the interests of the inhabitants of the several districts required it, provided no district having a bonded indebtedness should be so reduced in territory that the total amount of its indebtedness should exceed five per cent of its property valuation.    The above article II was repealed by Laws 1881, ch. 152.    Section 12 of the repealing act, which has since been amended and now appears as R. S. 72-213, and which specifies the duty of the county superintendent with reference to the formation of districts, provides:

"But no school district shall be formed containing less than fifteen persons of school age, no district shall be so changed as to reduce its school population to less than fifteen, and none having a bonded indebtedness shall be so reduced in territory that such indebtedness shall exceed five per cent of their assessed property valuation," etc.

Under Laws 1876, chapter 122, article III, section 4, it was pro-

vided that when a new district was formed, in whole or in part, from one or more districts the county superintendent, at *the time of forming such new district* should equitably determine the proportion of the present value of the schoolhouse and other property justly due to said new district, and provided for payment of the amount fixed to the new district. Section 5 of the same article provided for appeal. These sections now appear as R. S. 72-307 and 72-309.

As has been noted, the county superintendent refused to grant the relief prayed for, and she made no findings with respect to indebtedness or reduction of territory, or that the consolidated district would be reduced in its school population to less than fifteen. So far as the record before us goes, and it seems to be complete, the board of county commissioners made no findings, but merely overruled the decision of the county superintendent and ordered the new districts created.

We need not here stop to discuss whether, as a preliminary matter, it was necessary that a hearing be had upon the questions of indebtedness and apportionment thereof; whether the new districts would have a sufficient statutory school population; and whether the district remaining would have protection as to the amount of indebtedness as against its assessed value, and a sufficient statutory school population; and whether, in order to be valid and binding, all such findings must be incorporated in the order of the county superintendent in the first instance, if that officer had granted the relief sought, or in the order of the board of county commissioners as in the instant case, for it is quite evident that the effect of the order made was to take away from the consolidated district all of its territorial integrity, without any regard to its bonded and other indebtedness—and it is admitted there are outstanding bonds to the amount of $9,500—and to leave it without any school population whatever. In other words, the effect is to disorganize the consolidated-school district by indirection. The county superintendent and the board of county commissioners have no powers with reference to formation, alteration or disorganization of school districts, except those provided by statutes; there is no statute which authorizes the disorganization of a consolidated-school district or a so-called common-school district, in the manner or form attempted by the board of county commissioners. The purported creation of new districts was without regard to positive statutory requirements, and

was and is a nullity. Our former opinion did not give force and effect to the statutes hereinbefore mentioned and cannot be allowed to stand. It is set aside.

The trial court's ruling overruling plaintiff's demurrer was erroneous, and is set aside, and the cause is remanded with instructions to the trial court to sustain the demurrer.