No. 32,166

The State of Kansas, ex rel. Lloyd S. Miller, County Attorney of Brown County, *Appellant*, v. C. M. Eisenbise, County Superintendent of Public Instruction of Brown County, *Appellee.*

(46 P. 2d 852)

Opinion filed July 6, 1935.

*F. M. Pearl* and *Roby V. Nelson*, both of Hiawatha, for the appellant.
*Walker F. Means* and *W. E. Archer*, both of Hiawatha, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The state brought this action to enjoin the county superintendent of Brown county from changing the boundaries of four school districts for the benefit of another district.

The trial court denied the injunction, and the state appeals.

The controlling facts were these: In the southwestern part of Brown county is a village named Powhattan, which is situated in school district No. 80. That school district maintains a four-room school, staffed with four teachers, and equipped with a school building having modern facilities. The assessed valuation of the district is $460,963 and its tax rate for school purposes is 4.01 mills.

Surrounding school district No. 80 are school districts Nos. 43, 40, 86 and 41. These are typical common-school districts with no more than the usual facilities and conveniences of schools of like familiar character. In school district No. 41 the assessed valuation is $265,-327 and the school levy is 3.39 mills. The record does not show the assessed valuations and school tax rates in the other districts affected.

The defendant made an order changing the boundaries of school district No. 43 by detaching 360 acres therefrom and adding the same to school district No. 80. He similarly transferred 560 acres from school district No. 40, 240 acres from school district No. 86, and 160 acres from school district No. 41. All these transferred territories were added to school district No. 80.

The state contends that all this transfer of territory and alteration of school-district boundaries was arbitrarily made and wholly without lawful authority. The county superintendent did go through the form of posting notices in the four districts affected. Typical of all was the notice posted in school district No. 40. It reads:

"STATE OF KANSAS, DEPARTMENT OF EDUCATION.

"TWENTY DAYS' NOTICE OF ALTERATION OF SCHOOL-DISTRICT BOUNDARIES.

"Whereas, Application has been made to the superintendent of public instruction of Brown county to change the boundaries of school district No. 40, county of Brown, state of Kansas, as follows: . . .

"2. By detaching the east ½ of the SW quarter of section 27, the SE quarter of section 27, the NE quarter of section 34 and the NW quarter of section 35, all in township 3, range 16.

"Therefore, Notice is hereby given that, on the 2d day of April, 1934, at 2 o'clock p. m., I will take action upon said application.

"Dated this 12th day of March, 1934.

"C. M. EISENBISE, *County Superintendent.*"

Following such notice the formalities were simulated and the changes made as stated above.

The recitals in the notices of proposed alterations in the boundaries of the four districts that application had been made to the county superintendent to change the boundaries of these four school districts had no foundation in fact—unless an oral conversation of the county superintendent and one man who resided in Powhattan but contemplated moving to a farm in school district No. 40 be so considered. That man desired to have his farm attached to school district No. 80. Almost every other property owner in the four districts, so far as this record shows, was opposed to the proposed changes; and the defendant was thoroughly apprised of their attitude both before and after he set the formalities in motion to effect the alterations complained of. In conversations with protesting taxpayers the defendant developed his reasons for the alterations of the boundaries of the four districts. He repeatedly said:

"We should try to build up Powhattan and build up these little towns."

Elsewhere he had repeatedly said:

"He intended to change the district [No. 40]. He said the taxes were too high in Powhattan, district No. 80, . . . and that was before any notices were posted."

Other witnesses testified:

"He [defendant] thought he ought to equalize the taxes a little; he did not see why a man on one side of the road should pay more taxes than the man on the other."

One witness testified:

"After he listened to us, he said he would not do anything that would change the land until he took this matter to the commissioners to see whether they would approve his action in the case. That was the first time we went down to protest on March 3d before notices were posted."

Other witnesses testified to the same effect.

Evidence was adduced to show that school district No. 80 (Powhattan) had four teachers, fifty-eight pupils, a school building "with inside toilets, gymnasium and everything." School district No. 41 had twenty pupils and no modern conveniences in its schoolhouse. School district No. 86 had a one-room school with an enrollment of thirty-five to forty pupils. Apparently the changed boundaries in school district No. 40 cut down the school enrollment to thirteen.

While it should need no dissertation to show that the alteration of school-district boundaries is not the arbitrary prerogative of the

county superintendent, it is clear in this record that defendant proceeded on that assumption. It is not necessary to denounce that assumption as one of bad faith. The county superintendent merely erred in his conception of his official powers. His concern about the building up of the little towns like Powhattan was wholly misplaced. His exclusive official concern should be the building up of the little schools and he should let city councils and booster clubs look after the building up of the little towns.

The fact that the school-tax rate in school district No. 80 was higher than in the neighboring districts was not at all remarkable, in view of the difference in their educational facilities.

The alteration of the boundaries of school district No. 40 was not only made without authority but it was undertaken in plain disregard of the statute (R. S. 72-213) which forbids alterations which will reduce the school population to less than fifteen. Defendant suggests that the testimony which was that the school enrollment would be reduced to less than fifteen does not conclusively show that the school population would be thereby reduced below the statutory minimum. We think the evidence made a sufficient prima facie showing to establish that illegality. We do not overlook the point that the same statute provides that restrictions as to school population "shall not prevent desirable changes in school-district boundaries." If this record shows anything, it shows beyond cavil that the changes in boundaries were the very opposite of desirable to the taxpayers and school-district patrons affected thereby. By "desirable changes" the statute does not mean changes "desirable" to the county superintendent, nor by people who merely desire to lessen their own school taxes however adversely and unjustly the gratification of such desire may operate on others. Doubtless school district No. 80 is to be commended for maintaining a modern school and teaching staff, so long as it can afford it, but defendant was not justified in raiding the territories of four neighboring school districts to enhance the assessed valuation of the Powhattan district to enable it to continue to do so.

This cause was tried on the evidence adduced by the plaintiff, and was disposed of on defendant's demurrer thereto. In that situation it seems clear that the state was entitled to judgment. By the analogous case of *State, ex rel., v. Mowry,* 119 Kan. 74, 237 Pac. 1032, it was held:

"Conduct of an officer which is so oppressive, arbitrary and capricious as

to amount to fraud will vitiate his official acts, and courts within their equity jurisdiction have power to relieve against all injuries that would result therefrom.

"In an action involving the validity of the orders of a county superintendent in detaching territory from one rural high-school district and attaching it to another, the proceedings considered, and *held,* the acts of the superintendent were so arbitrary, capricious and in bad faith as to be tantamount to fraud, and, under the circumstances stated in the opinion, were such that the court was warranted in restraining the unlawful acts of the superintendent without an appeal being first had to the board of county commissioners." (Syl. ¶ ¶ 1, 2.)

The judgment is reversed and the cause remanded with instructions to grant a permanent injunction as prayed for in plaintiff's petition.