THE BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF FINNEY *et al.* v. S. A. BULLARD. ·
No. 15,483.   (94 Pac. 129.)

SYLLABUS BY THE COURT.

1. TAXATION — *Irregular or Excessive Assessment—Injunction.*
Injunction will not be awarded to prevent the collection of a
tax on the ground of an irregular or excessive assessment un-
less the case comes clearly under some acknowledged head of
equity jurisdiction.

2. ———— *Overvaluation of Property — Fraud Not Shown.*   In
the absence of fraud, or conduct which is equivalent to fraud,
an overvaluation of property will not of itself justify an
injunction against the collection of taxes, especially where
it would operate to invalidate the whole tax levy.

3. ———— *Excessive Assessment—Fraud.*   An assessment is not
deemed to be fraudulent merely because it is excessive.

4. ———— *Powers of Board of Equalization.*   The statute pro-
vides that irregular and excessive assessments may be cor-
rected before a board of equalization, and in the absence of
grounds justifying a resort to a court of equity the decision
·of the statutory board on valuation is plenary and final.

Error from Finney district court; WILLIAM EASTON
HUTCHISON, judge.   Opinion filed February 8, 1908.
Reversed.

STATEMENT.

THIS is a suit by S. A. Bullard against the board of
county commissioners of Finney county and William
Ford, as treasurer of that county, to enjoin the collec-
tion of taxes assessed against a body of land owned by
plaintiff in Finney county.   He alleged that the assess-
ment of the lands for the year 1902 was unjust and
excessive, in that they had been assessed on an im-
proper and illegal basis and proportionately higher
than a different class of lands in the same county,
known as alfalfa lands, and proportionately higher than
the personal property of the county.   It was further
alleged that on an appeal to the board of equalization

of the county that tribunal, instead of equalizing the property according to its true value in money, did so according to the usable value of the property, and that the board had placed a high value on the usable value in one case and a very low estimate in the other. There was a demurrer to the petition, which was overruled, after which an answer was filed denying any illegal action, and in a trial before the court the following findings of fact were made:

"(1) The court finds that at all times mentioned herein, and at the time of the commencement of this action, and many years prior thereto, Finney county was a duly organized county of the state of Kansas.

"(2) That William Ford was, at all times mentioned in the pleadings and evidence in this case, the duly elected, qualified and acting treasurer of said Finney county.

"(3) That the plaintiff, S. A. Bullard, was, prior to the month of March, 1902, and since that time, the owner of all the lands described in the petition and amended petition as belonging to him, comprising a total of about 11,200 acres.

"(4) That all the lands belonging to said plaintiff and involved in this action as such are described and known as sand-hill lands, and are so designated and classed, as distinguished from other lands in the county.

"(5) That all of said lands belonging to the plaintiff lie south of the Arkansas river, east of Garden City, in Finney county, Kansas, and are situated in the range of hills, known as sand-hills, that run parallel with the Arkansas river.

"(6) That said sand-hill lands are of less value than any other class of lands in Finney county.

"(7) That on the first Monday of March, 1902, the several assessors of Finney county met and agreed upon a method and system of valuation of property of said county for the purpose of assessment and taxation for the year 1902, and reached an agreement which is expressed as follows in the minutes of their meeting:

"'Motion made and carried that property be taken at full value, and, after exemption is deducted, divide by one-third; also, motion carried that lands be assessed at the same value as two years ago.'

Finney County v. Bullard.

"(8) That on the 5th of March, 1900, the various assessors of said county adopted the following resolution, viz.:

"'After some deliberation it was decided that $50 per quarter-section should be the valuation, both of sand-hill land and raw prairie lands, and it was further agreed upon that the assessors should see each section of bottom land, notice carefully the improvements thereon, and use his best judgment in the assessment of the same.'

"(9) That said assessors assessed the lands of the said plaintiff described in the petition, for the purpose of taxation for the year 1902, part thereof at $50 per quarter-section and part thereof at $65 per quarter-section.

"(10) That the plaintiff appeared before the board of equalization of said county at its meeting in June, 1902, and objected to the valuation of his lands at the sum of $65 per quarter-section, and objected to placing the same on the tax-roll for that amount, for the reason that said valuation was greater in proportion than the valuation of other classes of property in said county.

"(11) That the board declined to reduce the valuation below $65 per quarter-section and overruled his request, and at the same time increased the valuation of all his lands that had heretofore been valued by the assessors at $50 per quarter to $65 per quarter-section.

"(12) That the plaintiff insisted upon a reduction of the value of his lands, in order to equalize their valuation with that of other property in the county, but the board of equalization declined to make any reduction.

"(13) That all of the said described lands of the plaintiff were placed upon the tax-rolls of the county at $65 per quarter-section for the purpose of taxation for the year 1902.

"(14) That the plaintiff, S. A. Bullard, prior to the commencement of this action, paid to the defendant William Ford, as county treasurer, the sum of $116.98, as and for taxes on said described lands so owned by him, which was one-half of the taxes levied against said lands for the year 1902, including one-half of the state taxes assessed thereon.

"(15) That the other half of the state taxes remaining unpaid on the said lands of the plaintiff for the year 1902 was $22.88.

"(16) That on the 11th day of July, 1903, and prior

to the commencement of this action, the plaintiff tendered to the defendant William Ford, treasurer as aforesaid, in lawful money of the United States, the sum of $22.88, to pay the remainder of the state taxes due on said described land for the year 1902. But the defendant Ford refused to receive and accept the same.

"(17) That at the time of the commencement of this action the defendant Ford, as treasurer of the county, was about to sell all of the plaintiff's said lands for taxes claimed to be due thereon for the year 1902, and would have so sold the same except for the injunction which was granted restraining him from so doing.

"(18) That there was, in said Finney county, in the year of 1902, 627,732 acres of land subject to assessment and taxation.

"(19) That the total assessed valuation of lands in Finney county, for the year 1902, was $391,698.

"(20) That the average assessed valuation per acre of all the said lands in Finney county, for the purposes of taxation for the year 1902, was $62\frac{1}{2}$ cts.

"(21) That all the personal property in said county was assessed and placed on the tax-rolls of said county for the purpose of taxation, for the year 1902, at one-third of the valuation thereof, after deducting constitutional exemptions.

"(22) That the actual value of the lands of the plaintiff in the month of March, 1902, was $1 per acre.

"(23) That there was another and different class of lands in Finney county, known as alfalfa lands; that said lands are scattered over the county, east, north, northwest and west of Garden City, and extend from near the east line of the county to the west line.

"(24) That the lands described in 'Exhibit B,' attached to the plaintiff's amended petition, contain more than fifty tracts of such lands described and known as alfalfa lands, and contain more than 7000 acres, and that such list is a fair average of the alfalfa lands of the county.

"(25) That there is still another class of alfalfa lands in Finney county, which are highly improved, being set to alfalfa, having fruit-trees growing thereon, dwellings and other buildings erected thereon, and being surrounded by fences, and some of them being in close proximity to the city of Garden City; all of which greatly enhance the value of said improved alfalfa lands.

"(26) That the unimproved alfalfa lands described in plaintiff's 'Exhibit B,' and referred to in finding No. 24, were assessed, for the purpose of taxation for the year 1902, and placed on the tax-rolls of said county, at the average value of $2.50 per acre.

"(27) That the actual value of such unimproved alfalfa lands, in the month of March, 1902, was about $10 per acre—that is, an average value per acre.

"(28) That the average assessed valuation of improved lands, for the year 1902, as shown by the valuation set opposite such on the tax-rolls of the county for that year, is approximately $5.75 per acre.

"(29) That the average value in money of such improved alfalfa lands in the month of March, 1902, was about $25 per acre.

"(30) That the said lands of the plaintiff were assessed at more than 40 per cent. of their actual value in money; that the unimproved alfalfa lands of Finney county were assessed, in the year 1902, at 25 per cent. of their actual value in money; that the improved alfalfa lands of the county were assessed at less than 25 per cent. of their actual value in money."

On these findings the court awarded a permanent injunction, conditioned upon the payment by the plaintiff of the balance of the state taxes for the year 1902. Of the rulings the defendants complain.

*Edgar Roberts,* county attorney, and *Hoskinson & Hoskinson,* for plaintiffs in error.

*W. R. Hopkins,* and *R. J. Hopkins,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: S. A. Bullard, not being satisfied with the valuation which the local assessor placed on his lands, invoked the jurisdiction and judgment of the board of equalization, but the decision of that board was no more satisfactory than the other, and he then carried the question to the district court, asking that tribunal to revalue his property and to grant an injunction against the collection of the tax imposed by

23—77 KAN.

the regular taxing officers. If this attack prevails and it should be held that the assessment of property in Finney county was such as to invalidate the tax against Bullard's lands it would necessarily follow that the tax on other lands of the county for that year is invalidated. Do the facts alleged and found justify such a ruling and result? The courts are not charged with the powers and duties of assessors, and have no right to review the decisions of those officers as to the value of property. The legislature has placed the responsibility upon the assessors in the first instance, and in case an owner of property is dissatisfied with their assessments he may appeal to the board of equalization to review values and correct mistakes of judgment. When the statute prescribes a method for revising or correcting unequal assessments that remedy alone must be followed. Since the statute gives no right of appeal from the board of equalization, its opinion and judgment as to valuation are plenary, and it is not within the power of the courts to interfere with a tax merely because the assessment is excessive or unequal.

In *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591, where there was an attack upon the decision of the board of equalization, it was said:

"Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either." (Page 636.)

In the same decision the only grounds upon which there may be judicial interference were thus pointed out:

"But fraud, corruption, and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case,

however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity." (Page 636.)

Does this case fall within the rules justifying an interference with the discretion and judgment of the board of equalization and an injunction against the collection of the taxes founded on the valuations of that board? It does not appear that there was such a departure ·from duty by the officers as will give Bullard a right to this extraordinary remedy. It is not found by the trial court—nor does there appear to have been any ground for finding—that the officers were actuated by fraud, corruption, or conduct so oppressive, arbitrary or capricious as to amount to fraud. It is true that the officers failed to assess the property of the county on the basis of its cash value, which was a plain departure from the requirements of the statute; but it does not appear that, under the system of valuation adopted, Bullard was required to pay more than his just proportion of the taxes, if all the property of the county had been fairly and regularly assessed. In reaching its judgment the trial court only considered the valuation placed upon three classes of lands within the county, and these were sand-hill lands, like those of Bullard's, and improved and unimproved alfalfa lands. What values were placed on a great body of lands not embraced in these three classes does not appear, nor does it appear that, if all were considered, the valuation on Bullard's property could be regarded as excessive or that an injustice had been done to him. The fact that there was not an absolute equality of assessments, as between him and some other taxpayers, or that the assessors, in disregard of the statute, assessed property at less than its value, does not of itself justify the interference of a court of equity. (*Adams v. Beman, Treasurer,* 10 Kan. 37.) The mere fact, too, that the taxing officers made a fractional instead of the full value of the property the basis of assessment does

not authorize the granting of an injunction to restrain the collection of taxes. (*Challiss v. Rigg,* 49 Kan. 119, 30 Pac. 190.)

While the court has found that the valuation placed on Bullard's property is excessive, there is no intimation that it was fraudulently done, nor that it was an intentional discrimination in order to compel Bullard to pay more than his share of the taxes of the county; nor, as before stated, does it appear that he has been required to pay more than his proportionate share of taxes. There was a difference of opinion between him and the assessors as to the value of his lands as compared with those of others. The tax law provides a board of equalization to settle such differences of opinion, and it is one to which every taxpayer may apply. In revising and equalizing assessments that board has necessarily a broad discretion, and its decision, however erroneous, is plenary and final when fairly and honestly made. Judge Cooley, in speaking of the finality of its decision upon a question of excessive or unequal assessments, said:

"If fraud is charged, equity may interfere, but equity has no jurisdiction under its general powers to correct a merely unequal or unjust assessment when there is a statutory board that may do so." (Cooley, Taxation, 528.)

(See, also, *Lincoln County v. Bryant,* 7 Kan. App. 252, 254, 53 Pac. 775.)

The legislature has provided an adequate remedy at law for error and excess in valuations. Bullard availed himself of that remedy, and from the board of equalization obtained a review and revaluation of his property, which is binding upon him in the absence of special circumstances entitling him to an appeal to a court of equity. There is no imputation against the good faith of the board in making its decision. It did find some errors in the valuations of the assessors and undertook to revise and equalize them. There is no claim that the board did not honestly value Bullard's

property, nor any claim or finding that there was fraud, or the equivalent of fraud, in its rules of assessment and equalization. It is true that the court found the value of Bullard's property to be excessive, but an assessment is not fraudulent merely because it is excessive. We then have the judgment of the board that there is equality in the valuation of the property of the county and that there is in fact no excessive valuation of Bullard's property. The trial court, upon a limited inquiry as to values, has given as its opinion that Bullard's property is valued at fifteen per cent. higher than some other lands in the county; but the law does not give an appeal from the board of equalization to the court, nor does it warrant the court in substituting its opinion of values for that of the officers who are invested by law with the sole authority to determine values. The statute does not contemplate, nor would it be practical to permit, a review and revaluation in the courts of the state at the instance of taxpayers who might complain of overvaluation by assessors. The remedy for irregular or excessive assessments before the board of equalization was deemed by the legislature to be an adequate one, and in the absence of other grounds it is an exclusive remedy.

Reference is made to *C. B. & Q. Rld. Co. v. Comm'rs of Atchison Co.,* 54 Kan. 781, 39 Pac. 1039, as an authority for an award of an injunction. That case, aside from being an extreme one, is easily distinguishable from the one before us. There the assessment was not only irregular and excessive but it was an intentional discrimination against one class of property, under which certain taxpayers were required to pay four times more than their proportion of the taxes. The rule adopted for the assessment there was designed to destroy equality and uniformity between classes of property, one basis being used for the disfavored class and another basis for all other property in the county. The rule making such a gross discrimination could not

have been adopted or applied in good faith, and hence it furnished a case for equitable relief. There, too, it was found that no effective remedy could be obtained before the board of equalization, and, besides, it was possible to give relief by injunction in that case without affecting the whole tax levy of the county or locking up the revenue necessary to conduct the local government. The facts justifying a resort to a court of equity in that case do not exist in this one, and the findings of fact here did not justify the district court in awarding an injunction.

The judgment is therefore reversed and the cause remanded, with instructions to render judgment for the defendants.