No. 32,707

HENRY J. ALLEN, *Plaintiff*, v. PAUL BURKE, as County Treasurer of Sedgwick County; C. N. CARTWRIGHT, as County Clerk, etc.; THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK; GEORGE E. ROGERS, JOHN F. MILLHAUBT and HERMAN A. HILL, as County Commissioners, etc., *Defendants*.

(53 P. 2d 894)

258

Opinion filed January 25, 1936.

R. R. Vermillion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling and Henry V. Gott, all of Wichita, for the plaintiff.

H. W. Hart, Glenn Porter, Enos E. Hook, Getto McDonald and Dwight S. Wallace, all of Wichita, for the defendants.

The opinion of the court was delivered by

HUTCHISON, J.: This is an original proceeding in mandamus brought by a taxpayer to compel the defendants, the county commissioners, county clerk and county treasurer, to comply with the order of the state tax commission by changing the tax rolls of the county so as to agree with said order and cancel the excess amount of valuation of plaintiff's property and apply the proper levy to the valuation fixed by the state tax commission. An alternative writ was issued and an order was made to show cause why the court should not issue a peremptory writ of mandamus. At the same time an injunction was issued against such officers restraining them from issuing execution and selling any of plaintiff's property for taxes during the pendency of the mandamus action. The defendants have filed a motion to quash the alternative writ and also a motion to dissolve the restraining order.

The excess assessment, as claimed by the plaintiff, is that imposed by the assessor for escaped assessments for the years 1929 to 1933, inclusive, under the provisions of R. S. 79-1427. It is based upon double the assessed value of the outstanding contract for balance due on the sale of 650 shares of the capital stock of the Beacon Publishing Company, less the intangible property listed for taxation by the plaintiff for each of the five years. The motion of the plaintiff for the writ and the exhibits thereto attached state that the plaintiff each of the five years involved duly made his annual tax return and each year made diligent inquiry of the proper taxing officials, including the deputy assessor and the state tax commission and its attorney, regarding the taxability of said agreement, and was advised by each and all of them that the same was not taxable, and therefore did not return such property for taxation for any of said years. That thereafter, about February 1, 1935, the plaintiff duly filed with the state tax commission his complaint and application for relief from a tax grievance, and thereafter a hearing was had and the commission made an order holding that the property was subject to taxation under the intangible law (Laws 1927, ch. 326; R. S. 1933 Supp. 79-3108 to 79-3120, inclusive) for all six years except the year 1930, and for the year 1930, there being no intangible law that year, it was subject to the escaped assessment law, and fixed the amount due for that year and exonerated the

plaintiff from penalties and also of tax or penalties for the other years under the intangible law.

The motion for the writ shows that the county clerk and county treasurer did not change their records to conform to the order of the tax commission, and the plaintiff offered to pay the county treasurer for the full amount of the taxes as found and directed by the tax commission, which the county treasurer refused to accept, but the county treasurer threatened to issue to the sheriff of said county tax warrants to be levied upon the property of the plaintiff for the collection of the escaped assessment taxes imposed by the assessor.

The exhibits attached to the plaintiff's motion for the alternative writ in this case were the contract of sale of shares of stock in the printing plant and the obligation for payment of the same, the order of the tax commission made July 26, 1935, holding this contract to be intangible property and therefore not liable for taxation under the escaped assessment law, except for the year 1930, for which the value of the contract as personal property was found to be $225,000, and a supplemental order correcting the rate of taxation for the year 1930 to the personal-property rate of taxation for that year instead of the rate of 1934. This was the situation, as stated in the motion for a writ of mandamus, when the motion was filed and the alternative writ was issued.

The motion of the defendants to quash the alternative writ is like a demurrer, and for the consideration thereof the statements contained in the motion for the alternative writ and the attached exhibits are regarded as the facts in the case.

A preliminary matter has to do with the injunction feature of the case. Defendants maintain that two causes of action are improperly joined, that this is an application for an injunction as well as an alternative writ of mandamus, and such misjoinder is ground for quashing the writ. There is no ambiguity about the cause of action. It is a mandamus action and not an action for an injunction. But an injunction pending the hearing of the mandamus action is always proper to hold matters *in statu quo*—in this case to prevent the sale of the property of the plaintiff until this hearing is completed.

It was held in the early case of *C. K. & W. Rld. Co. v. Comm'rs of Chase Co.*, 42 Kan. 223, 21 Pac. 1071, which was an original mandamus case like the one at bar, that—

"Inherently the supreme court must have the power to protect its own

jurisdiction, its own process, its own proceedings, its own orders, and its own judgments; and for this purpose it may, when necessary, prohibit or restrain the performance of any act which might interfere with the proper exercise of its rightful jurisdiction in cases pending before it." (p. 225.)

". . . every regularly constituted court has power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, and the enforcement of its judgments and mandates. . . . So demands, matters, or questions ancillary or incidental to or growing out of the main action, and which also come within the above principles, may be taken cognizance of by the court and determined, for such jurisdiction is in aid of its authority over the principal matter." (15 C. J. 810, 811.)

"The court, in the exercise of its power to grant injunctions, may issue a restraining order or temporary injunction, in aid of or as ancillary to a proceeding. . . ." (14 R. C. L. 323.) (See, also, *State v. Brewing Association,* 76 Kan. 184, 90 Pac. 777; and *Union Pac. Rld. Co. v. Missouri Pac. Rld. Co.,* 135 Kan. 450, 10 P. 2d 893.)

We have no hesitancy in concluding that there is no misjoinder of causes of action here, as there is only one cause of action in the case, and that is mandamus. The injunction feature is wholly ancillary, and as no good reason is assigned for dissolving the injunction as an ancillary matter, the motion to dissolve such injunction is denied.

The defendants insist that because the state tax commission is an administrative board and not a judicial body its findings upon legal questions are not binding on county officers and that they have discretion to do as they think best, and therefore they cannot be compelled to conform to any such order issued by the tax commission either by an order of that commission or by a court. Is the compliance with the order of the commission a discretionary matter or a ministerial duty? Defendants cite *Robinson v. Jones,* 119 Kan. 609, 240 Pac. 957, in support of the view that the duties of these defendants are discretionary. That was a mandamus tax case where the county officers refused to carry out the order of the state tax commission to cancel certain uncollected taxes and refund the part collected for what was termed overriding oil royalties, and the court upheld the right of the county officers to defend on the ground that the order was erroneous as a matter of law, yet it nowhere held such matters were discretionary, but that they were purely ministerial duties.

"Plaintiffs' rights having been established by the tax commission, compliance with its mandate is a purely ministerial duty, and the suggested remedies are not fair substitutes for specific performance." (p. 611.)

It also held:

"Mandamus is a remedy properly invocable by an aggrieved taxpayer to compel a board of county commissioners to comply with an order of the tax commission to cancel uncollected taxes and to refund taxes which have been collected." (Syl. ¶ 1.)

"The tax commission is an administrative body, and its decisions in all matters within the scope of its supervisory power, involving administrative judgment and discretion, are conclusive upon subordinate taxing officials. In the exercise of its functions, the tax commission must as a matter of necessity interpret the tax laws, and such interpretations are prima facie binding." (p. 612.)

Another case cited by defendants along the same line is *Chicago, R. I. & P. Rly. Co. v. Ford County Comm'rs*, 138 Kan. 516, 27 P. 2d 229, which holds that the orders of the state tax commission are not conclusive on the courts on questions of law. In other words, on such questions the matters are subject to review, but that does not help the contention of the defendant county officers, that such matters cannot be controlled by mandamus. In fact, this case cited was an original proceeding in mandamus, and it was there held:

"While the state tax commission has supervisory and controlling power over subordinate taxing officers, the power exercised is administrative, not judicial, and its decision ordering the county to issue a refunding warrant to a taxpayer who had paid an alleged illegal tax under a protest is not conclusive on the courts on questions of law nor does it prevent the court from rendering a proper judgment on the issues involved in the order." (Syl. ¶ 1.)

Defendants cite the definition of discretion given in *Farrelly v. Cole*, 60 Kan. 356, 56 Pac. 492, as follows:

"Discretion is defined, when applied to public functionaries, to be 'a power or right, conferred upon them by law, of acting officially in certain circumstances according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others.'" (p. 372.)

The two cases previously cited take discretion out of the tax duties here under consideration and make them subject to review by the courts, and that is the present question. It was said in the recent case of *Kaw Valley Drainage Dist. v. Zimmer*, 141 Kan. 620, 42 P. 2d 936, that it was governed by the rule announced in the Ford county case, and then added:

"It was there said, *inter alia*, that an order of the state tax commission is only an administrative order, not a binding judgment like that of a judicial tribunal. But such an order is prima facie valid, and public officials may and should act upon it, where its validity is not promptly challenged before a court of competent jurisdiction." (p. 626.)

In *Kittredge v. Boyd*, 136 Kan. 691, 18 P. 2d 563, which was a mandamus action against the state treasurer to recover an inheritance tax paid under protest, it was said that mandamus has become the familiar vehicle to accomplish the end of obtaining an authoritative determination of legal questions.

Under all these authorities cited by both parties there can be no doubt of the legal question involved in this action being one that should properly be determined in a mandamus action.

The defendants contend that they should not be compelled to comply with an order of the state tax commission which is erroneous and invalid. As shown by the authorities heretofore cited, both the taxpayer and the county officers have a right to review the orders of the commission, and this case is brought by the taxpayer for that very purpose, viz., to review the legal questions involved in the order of the commission.

Defendants claim that the intangible tax law, R. S. 1933 Supp. 79-3108 to 79-3120, is supplemental to the then existing tax laws and did not repeal any of the provisions of the general tax law, and that by this action the plaintiff seeks to compel the defendants to comply with an order of the state tax commission which is erroneous and invalid. Both parties very learnedly go into the discussion of the constitutionality of the intangible tax law, the questions of the inconsistencies of the two laws, the repeal of the old law or parts thereof by the new law, by implication or otherwise, and the validity of the new intangible law. These very interesting and well-argued propositions may raise very essential and important matters for future consideration, but we think a determination of them is not necessary here, except to hold that the intangible act contains its own requirements and conditions for imposing the penalty of the personal-property levy which the commission did not find had been established as to false or fraudulent listing or failure to list, which applies to all the years except 1930, and we hold that the order of the commission was not erroneous or invalid as to all the years except 1930.

R. S. 1933 Supp. 79-3118 is as follows:

"If any person, partnership, association, company or corporation shall knowingly give a false or fraudulent list or statement required by this act, or shall fail or refuse to deliver to the assessor when called upon for that purpose, a list of the taxable property which under this act is required to be listed, or shall temporarily convert any part of such property into property not taxable, for the fraudulent purpose of preventing such property from being

listed, or of evading the payment of taxes thereon, or shall transfer or transmit any property to any person with such intent, he or it shall be guilty of a misdemeanor, and subject to a fine of not less than fifty dollars nor more than five thousand dollars; and in addition thereto any such property which, for any of the foregoing reasons, has not been returned under this act shall be subject to the regular personal-property rate of taxation within the taxing district where the owner thereof resides."

As to the year 1930, there was no intangible law in existence at that time, and this contract held by the plaintiff was that year just like other personal property owned by him, and as it was not listed it was subject to the provisions of the escaped assessment statute, R. S. 79-1427. This finding or determination of the tax commission was not erroneous nor under a law claimed to be invalid as applied to this particular year. Plaintiff here seeks to enforce the order of the tax commission imposing taxes on escaped assessments without doubling the same.

· The defendants also claim that the assessment of this valuable contract held by the plaintiff was an escaped assessment for all these five years, made by the county assessor, which was final and conclusive and was not subject to review by the state tax commission, and they emphasize in this connection the duty of plaintiff to candidly and honestly list the contract for taxation at its true value as being a duty of the owner rather than a duty of the assessor, citing among other cases the case of *Davis-Wellcome Mortgage Co. v. State Tax Comm.*, 140 Kan. 734, 38 P. 2d 1100, which fully bears out defendants' contention as to duty, but does not justify excessive consequences.

The provisions of the statute on escaped assessments, R. S. 79-1427, are as follows:

"That if the assessor shall discover that any personal property, which was subject to taxation in any year, has not been assessed, or for any cause any portion of any personal property has escaped taxation in any year or years within five years next preceding, it shall be the duty of the assessor to list and value such property at twice its real value for each such year during which such property, or any portion thereof, was not taxed, and it shall be designated on his return as 'escaped assessment' for the preceding year or years, and he shall indicate in his return the year or years for which such escaped assessment or assessments is made. If the owner of such property shall be deceased, then the taxes charged as herein provided shall be assessed against the estate of such deceased person for three years only preceding his death, and shall be paid by the legal representative or representatives of such estate: *Provided,* That in the event that such escaped assessment is due to error of any assessor,

or that any taxpayer was not afforded an opportunity to list his escaped property, then such escaped assessment shall be entered at its true value."

Defendants insist that for the reasons assigned above the order of the commission was erroneous and the motion to quash the alternative writ should be sustained. The motion to quash the writ is aimed at the writ, which includes the motion for the writ and the exhibits attached, one of which is the order of the commission; and the motion to quash reaches the insufficiency of the combination because they all go together to make up the writ. Many cases are cited on this subject from other jurisdictions which may have differently worded statutes.

The language of R. S. 79-1602 as to the duties of the county board of equalization seems to be general enough to include even escaped assessments when it states:

". . . shall make such changes in the assessment of property as shall be necessary in order to secure an assessment of all property at its actual value in money. . . . The board shall hear and determine any complaint made by any taxpayer as to the assessment and valuation of any property in the county which may be made to the board by the owner of such property or his agent or attorney."

Then the state board is created and its duties are defined by R. S. 1933 Supp. 79-1409, as follows:

"The tax commission as hereby created shall constitute a state board of equalization, and shall equalize the valuation and assessment of property throughout the state; and shall have power to equalize the assessment of all property in this state between persons, firms or corporations of the same assessment district, between cities and townships of the same county, and between the different counties of the state, and the property assessed by the said tax commission in the first instance. And any person feeling aggrieved by the action of the county board of equalization may, within thirty days after the decision of said board, appeal to the state board of equalization for a determination of such grievance."

R. S. 79-1702 also provides:

"If any taxpayer shall have a grievance not remediable or which has not been remedied under section 1 of this act such grievance may be presented to the tax commission at any time prior to the first day of August of the year succeeding the year when the assessment was made and the taxes charged which are the basis of the grievance, and the said commission shall have full authority to inquire into the grounds of complaint, and if it shall be satisfied from competent evidence produced that there is a real grievance, it may direct that the same be remedied either by canceling the tax if uncollected together with all penalties charged thereon, or if the tax has been paid, by ordering a refund of the amount found to have been unlawfully charged and collected."

These statutes were held to apply to excessive levies on railroad property in the case of *Atchison, T. & S. F. Rly. Co. v. Drainage District,* 133 Kan. 586, 1 P. 2d 253, and to grievances as to valuations generally, and ordering of refunds in the Zimmer case.

It was held in *Lipke v. Lederer,* 259 U. S. 557, 42 S. Ct. 549, with reference to the collection of a government tax as a penalty that—

"Before collection of taxes levied by statutes enacted in plain pursuance of the taxing power can be enforced, the taxpayer must be given fair opportunity for hearing—this is essential to due process of law." (p. 562.)

As prescribed by R. S. 79-301, every person of full age and every corporation should make a list of his taxable property for the assessor, and the order of the commission attached to the writ in this case so holds the plaintiff responsible for having failed so to do, but does excuse him from the penalty imposed as the statutory proviso permits, because the assessor was equally at fault. Defendants urge that the citizens should not be made to suffer this loss of penalty because of the fault of an officer, but that is a matter to take to the legislature which added a provision to the section on escaped assessment, eliminating the penalty where the escaped assessment was due to the error of any assessor.

Our attention is directed to limitations on officers in making corrections and their liability, as prescribed by R. S. 79-1701, 79-1702 and 79-1703. The first of these sections mentions the clerical and other errors that may be corrected by the county clerk, the board of county commissioners and the state tax commission, giving to the latter such power and authority with reference to "all grievances" "not remedied as hereinbefore provided previous to February 1," and the section concludes with the following language:

"Valuations placed on property by the assessor or by the county board of equalization shall not be considered under this section as erroneous assessments."

R. S. 79-1702 is quoted above, and it authorizes the tax commission to consider the grievances of any taxpayer not remediable or which have not been remedied under section 1. (*State, ex rel., v. Riley County Comm'rs,* 142 Kan. 388, 47 P. 2d 449.) We fail to see the elimination of assessments from the grievances that may be remedied by the tax commission by these sections, as claimed by the defendants. Our statutes do not seem to exclude penalties and assessments from such grievances as may be thus remedied as the statutes of some other states seem to do.

The claim that the remedies afforded through the county equalization board and the state tax commission to the aggrieved taxpayer are limited to those of the current year will not affect the situation in this case as the assessment for the escaped assessment was made in the current year in which the remedy was sought.

It is argued that the failure of the taxing officers to list the contract of the plaintiff for the several previous years is not a defense and furnishes no ground for the issuance of the writ. It may not, but under the proviso with which R. S. 79-1427 closes it furnishes reason and facts sufficient to eliminate the penalty imposed by the assessor for the year 1930. And under the intangible law for the other years, a different penalty is provided to be imposed under certain definite circumstances found in this case not to have been established.

Since we have not concluded that the order of the state tax commission was erroneous, we need not consider the argument of the defendants as to the insufficiency of the writ of mandamus when one of the facts on which it is grounded may be shown to be erroneous.

We conclude that the motion of the defendants to quash the alternative writ should be overruled and denied and the peremptory writ of mandamus prayed for should be allowed. It is so ordered.