No. 33,787

THE EUREKA BUILDING AND LOAN ASSOCIATION, *Appellee,* v. VICTOR
D. MYERS, Sheriff; D. M. WALLACE, Treasurer; and THE BOARD OF
COUNTY COMMISSIONERS OF THE COUNTY OF GREENWOOD, *Appellants.*

(78 P. 2d 68)

Opinion filed April 9, 1938.

*J. F. Darby,* county attorney, *Walter Pleasant* and *James D. Dye,* both of Ottawa, for the appellants.

*Homer V. Gooing,* of Eureka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an injunction action brought in the district court of Greenwood county by a building and loan association, with office and place of business in that county, against the sheriff, treasurer and board of county commissioners of that county to enjoin and restrain them from collecting from or enforcing payment by plaintiff for its tax liability on its shares of stock for the year 1935 any amount in excess of $433.43, alleging that the assessment of the shares was excessive by reason of an inadvertent and erroneous statement made by the secretary of the association to the

county assessor in giving the book value of certain real estate instead of the actual fair cash value of real estate held and owned by it—the book value being $177,579.32, the actual fair cash value being $155,-200 and the difference being $22,379.

The petition alleged that the association made timely application to the county board of equalization for a correction of the error and irregularity in the statement, which was denied, and prior to July 30, 1936, plaintiff filed with the state tax commission its complaint of tax grievance under G. S. 1935, 79-1702, which complaint, it was alleged, the state tax commission arbitrarily and without just cause refused to consider. It was further alleged that the amount tendered was the correct amount of taxes on the shares of stock with interest and that plaintiff had no adequate remedy except by injunction. A corrected statement as to the value of said shares was attached to the petition as an exhibit.

After the overruling of a demurrer to the petition the defendants filed an answer claiming that the statement filed with the county assessor by the plaintiff as to the value of its property was a true and correct statement, that the valuation, assessment and levies made by the commissioners of the county and the state tax commission was a fair and reasonable assessment and that the valuations, assessments and levies so made are final and plaintiff is precluded from being granted the relief for which it pleaded. The answer admitted the other allegations of the petition.

Evidence was introduced concerning the use of the book value of real property and other items of assets and deductions as well as the statement filed by the plaintiff with the county assessor. A stipulation was also made and correspondence with the state tax commission was introduced. The stipulation was to the effect that the secretary of the association had filed with the county assessor on March 25, 1935, a sworn statement of the valuation of its shares, which under the heading of assets was the sum of $177,579.32 as the value of the real estate of the association; that such amount was offset and balanced in the financial statement with various liabilities, and the total value of the shares was shown in line 20 of the statement as being $67,521.32; that the association in July, 1936, filed a complaint and tax grievance with the state tax commission seeking a reduction of the assessed value of its shares on the ground of a clerical error in the return in that the real estate owned had been reported at a value of $22,379 in excess of its actual value, and that the state tax com-

mission had granted no relief; that the real estate of the association as of March 1, 1935, had been assessed at $71,455; that the sum of $177,579.32, above mentioned as the reported value of the real estate of the association, represents the total amount of the investment of the association in its real estate on March 1, 1935, and that a tender was made by the association to the county treasurer on July 20, 1937, of the sum of $433.43 as payment in full of all taxes on the shares of the association and interest thereon for the year 1935, which tender was refused by the county treasurer.

During the trial of the cause, which was commenced and concluded on the 25th day of October, 1937, the following language was added to the sixth paragraph of the petition with the consent of the trial court:

"The conduct of the county and state taxing officers in refusing as aforesaid to permit correction of said error and irregularity was arbitrary, oppressive and capricious, amounting to fraud as to plaintiff's rights."

The trial court in its journal entry or decree included findings of fact and conclusions of law, although they were not denominated as such, some of which will be later cited or quoted. The decision was in favor of the plaintiff granting an injunction and after the overruling of a motion for a new trial the defendants appealed.

As to the preliminary efforts of the plaintiff to correct this alleged error in the value of the shares of plaintiff association on March 1, 1935, as inadvertently given in the tax statement filed March 25, 1935, by its secretary, the court found:

"That plaintiff made timely application to the appropriate taxing officers of the county and state for correction of the error aforesaid, and for reduction of the stated assessed value of its shares, and that each and all of said taxing officers arbitrarily, oppressively and capriciously failed and refused to consider properly plaintiff's applications and complaints, or to make or permit any correction of said error."

The court used the word "timely" as to the making of the application to the taxing officers of the county and state for the correction desired. This was the exact word used by the only witness who mentioned any time as to the application made to the county board of equalization. The county board of equalization is only authorized to consider such matters between the third Monday of May and the 20th day of June each year (G. S. 1935, 79-1602), and an appeal can be taken from the decision of such county board to the state board of equalization within thirty days from the date of the de-

cision, and the state board meets on the second Wednesday of July for the purpose of hearing such appeals. (G. S. 1935, 79-1409.) The first application that the record shows was made·to the state tax commission was in February, 1936, then again on July 21, 1936, and another was made nine days later, on July 30, 1936. So, apparently, nothing whatever was done by the plaintiff to correct this alleged error after its failure before the county board of equalization by way of appeal or otherwise until several months later, and still later, in July, 1936, an original application was filed with the state tax commission as a "tax grievance," in which it was alleged that the assessor inadvertently and erroneously took from the books of the association the amounts actually invested in its real estate instead of the fair cash value thereof as determined by the assistant building and loan supervisor of Kansas, which was $22,379 less.

It is argued that this application for relief from this tax grievance was made under G. S. 1935, 79-1702. The application was denied by the state tax commission, stating a reason for its action and also directing the $39,968 be transferred from the tangible to the intangible list. A complete copy of the letter written by the state tax commission on August 6, 1936, to the attorney for the association is as follows:

"The full commission has gone over and considered the application of the Eureka Building and Loan Association, for a further equalization of its assessed value for 1935. We have examined our records, and letter files. While our independent recollection is somewhat clouded we are quite sure that a representative of this association, accompanied by the superintendent of building and loan associations, came to see us regarding this assessment last February. It occurs to us that the adjustment then made was satisfactory to the association.

"As a result of that conference we find our letter of February 10, 1936, to Mr. Brookover, your county clerk. In this letter to him we advised him to so correct his tax rolls with relation to this association, so there would show $39,968 intangible and $27,533 tangible valuation. A letter we have just received from Mr. Brookover confirms these figures. This commission is now of the opinion that this assessment should not be disturbed. To refer back to 1936 and open up this matter for a reëqualization would really amount to a rebate of taxes.

"It is our opinion that *Benn v. Slaymaker*, in 93 Kansas, page 64, is directly in point. Another thought occurs to us. The association made this return and we have accepted the figures as furnished by the association. It seems rather late now for the association to press its claim that the figures are not correct. Mr. McCue seems to have the idea that if the value of the real estate as shown was reduced it would automatically reduce the amount shown at line 8.

We do not believe that that necessarily follows. The first part of this report is quite independent of the second part. The first part is simply a financial statement. The second part relates to the value of shares.

"This commission is satisfied that this assessment should not be disturbed."

Line 8 is the last line and total of the assets, and reads as follows: "Total amount to credit all shares, $315,758.94."

This letter of the state tax commission not only gives a reason for its declining to grant the relief requested, but it also transfers a substantial amount of the valuation from the tangible to the intangible list, which would make quite a saving in rate and amount of taxes imposed. The only act of this commission or of the county board we can get from the record is a failure and refusal to grant the application of the association by way of correcting the value of the real property. There is no fact found that makes such acts arbitrary, oppressive or capricious.

"Arbitrary" is defined to be "without adequate determining principles; . . . not done or acting according to reason or judgment." (4 C. J. 1476.)

"Oppressive" is defined as "harsh, rigorous, or severe." (46 C. J. 1121.)

"Capricious" is "changing apparently without regard to any laws." (Webster's New International Dictionary, 2d ed.)

The case cited in the letter above quoted not only gives reasons for refusing to grant the request but cites a decision in support of such reason. The case is *Benn v. Slaymaker*, 93 Kan. 64, 143 Pac. 503, the syllabus of which is as follows:

"On April 12, 1912, the managing partner of a firm returned its personal property for taxation. No steps were taken to correct the valuation which he placed on the property until April 22, 1913, when the passive partner filed a petition with the tax commission to reduce the valuation, alleging that the valuation was excessive and was made so with intent on the part of the managing partner to defraud him. The tax commission ruled that it had no authority to grant the desired relief. *Held*, the ruling was correct.

"The decision in the case of *Finney County v. Bullard*, 77 Kan. 349, 94 Pac. 129, that an assessment is not deemed fraudulent merely because it is excessive, and that a court of equity has no jurisdiction under its general power to correct an unequal and unjust assessment when a statutory board has been provided for that purpose, approved and followed."

The rule therein stated has not been modified, but was cited in the case of *State, ex rel., v. Mowry*, 119 Kan. 74, 237 Pac. 1032. In that case extensive findings of facts were made which unmistakably showed fraud, and it was there held that—

"Conduct of an officer which is so oppressive, arbitrary and capricious as to amount to fraud will vitiate his official acts, and courts within their equity jurisdiction have power to relieve against all injuries that would result therefrom." (Syl. ¶ 1.)

In the Benn case, *supra*, the case of *Finney County v. Bullard*, 77 Kan. 349, 94 Pac. 129, was followed, where it was held that—

"Injunction will not be awarded to prevent the collection of a tax on the ground of an irregular or excessive assessment unless the case comes clearly under some acknowledged head of equity jurisdiction.

"In the absence of fraud, or conduct which is equivalent to fraud, an overvaluation of property will not of itself justify an injunction against the collection of taxes, especially where it would operate to invalidate the whole tax levy.

"The statute provides that irregular and excessive assessments may be corrected before a board of equalization, and in the absence of grounds justifying a resort to a court of equity the decision of the statutory board on valuation is plenary and final." (Syl. ¶¶ 1, 2, 4.)

In 61 C. J. 1077 it is said:

"Injunction will not lie to restrain the collection of a tax merely on an allegation that the valuation of the property assessed is excessive; and to obtain the relief it is not sufficient that the tax officials made a mistake in their valuation, that the court might reach a different conclusion, or that there is a difference of opinion regarding the reasonableness of the valuation; the courts will not, in the absence of illegal or fraudulent exercise thereof, control the administrative discretion of taxing officers." (See, also, *National Bank v. Fisher*, 45 Kan. 726, 26 Pac. 482; *Winfield Bank v. Nipp*, 47 Kan. 744, 28 Pac. 1015; *Bank of Santa Fe v. Buster*, 50 Kan. 356, 31 Pac. 1094; *Dowell v. Railway Co.*, 83 Kan. 562, 112 Pac. 152.)

We do not think that the failure and refusal of the county board or the state tax commission to grant the relief for which the plaintiff applied was such as to justify a conclusion that such failure and refusal was arbitrary, oppressive or capricious. Unless it was such, or the assessment was void, or the matter involved was not administrative, but judicial, or such as would involve an interpretation of a law, the court would not have the right, power or authority to enjoin the collection of the tax.

As stated before, the matter involved before the state tax commission was a tax grievance under G. S. 1935, 79-1702, and as claimed by the plaintiff, if it had been permitted to correct the alleged error in the item of value of its real estate owned, it would have affected the assessed valuation of the shares. There are involved here three distinct values to be considered: first, there is the assessed value of the real estate owned by the association, which assessed

valuation was placed thereon by the proper assessing officers without consulting with the owner, and upon which the association in this case would have to pay the regular tax imposed; then there is the book value of the real estate taken in by the association partly by foreclosure proceedings, which includes the unpaid part of the mortgage, the court costs and the unpaid taxes and insurance, which may make this book value much more than it is actually worth, but that is what it has cost the association. This is the item of $177,-579.32 in this case. The third item under consideration is the actual fair, cash value of this real estate, which is neither the amount at which it was assessed nor the cost of it, but what it is really worth, which in this case the association claims to be $155,200. The county board and the state tax commission have both failed and refused to correct this alleged error and reduce the value of this real estate from $177,579.32 to $155,200, and thereby reduce the assessed value of the shares of the association by $22,379. The trial court made the following finding:

"That the total actual, fair, cash value of all plaintiff's real estate as of March 1, 1935, did not exceed the sum of $155,200, which sum had been determined by impartial appraisal to be the actual, fair, cash value of all plaintiff's real estate shortly prior to the 1st day of March, 1935."

This was not, strictly speaking, an assessed valuation, but the difference between it and the value given by the association in its return was $22,379, and that amount was deducted by the court from the assessed valuation of $67,521.32 to give the proper assessed valuation of the shares for taxation. The purpose of this proceeding is in effect the same as that before the county board and the state tax commission, viz., to reduce the assessed valuation of the shares of the building and loan association.

It was said in *Symns v. Graves*, 65 Kan. 628, 70 Pac. 591:

"Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. These are fundamental principles in the law of taxation and cannot be waived aside to meet the exigencies of any particular case." (p. 636.)

The court in the case at bar did not substitute its own judgment for that of the assessor, but it accepted and adopted the judgment of the assistant building and loan supervisor of Kansas in preference to

that of the assessor, the determination of which was the same in effect and was certainly an administrative function rather than a judicial one.

In the case of *Hodgins v. Shawnee County Comm'rs*, 123 Kan. 246, 255 Pac. 46, the plaintiff did not bring the matter of the alleged error in the assessment to the attention of the board of equalization, but it was there said in the opinion that—

"An incomplete statement was made by the company, a valuation was placed upon the property by the assessor, and although it may have been excessive to some extent, the valuation fixed by the assessor must be regarded as an exercise of his best judgment, as it was done in good faith. The real value of property is a matter of judgment, and for taxing purposes the duty of exercising this judgment is placed upon the assessor, and a court may not usurp his functions nor substitute its opinion of value for his." (p. 251.)

A clear distinction was made between the act of fixing an assessment on property and the matter of allowing an exemption in the recent case of *State, ex rel., v. Davis*, 144 Kan. 708, 62 P. 2d 893, the former being held to be an administrative function and the latter judicial.

It is urged that this case is concerned with the assessed value of the shares of the association and not with that of the real estate which had already and independently been assessed, but it is pleaded and urged by the plaintiff that this excess value of the real estate, $22,379, should be deducted from the assessed value of the shares for taxation, thus reducing that amount of $67,521.32 by $22,379, so that the claimed excess is the same in both places and in that way it does involve and concern the assessed value of the shares.

Appellee cites *Kaw Valley Drainage Dist. v. Zimmer*, 141 Kan. 620, 42 P. 2d 936; *State, ex rel., v. Riley County Comm'rs*, 142 Kan. 388, 47 P. 2d 449, and *Allen v. Burke*, 143 Kan. 257, 53 P. 2d 894, which treat of the rights and privileges of a taxpayer under G. S. 1935, 79-1702, but the case at bar is an independent injunction action and not an action under the tax-grievance statute.

We conclude that the facts alleged, proved and found as to the failure and refusal of the county board of equalization and the state tax commission to correct the alleged error in assessment of the shares of the plaintiff were not such as to make such acts arbitrary, oppressive or capricious, and that the matter involved was administrative rather than judicial, especially when the assessment was not void and the action was not one calling for an interpretation of a law.

The judgment is reversed and the injunction is denied.