No. 34,540

THE MILLER INVESTMENT COMPANY et al., *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK et al., *Appellees.*

(98 P. 2d 109)

Opinion filed January 27, 1940.

*A. V. Roberts, Paul W. Schmidt* and *Verne Roberts,* all of Wichita, for the appellants.

*Tom Harley,* county attorney, *Robert H. Nelson, Harold A. Zelinkoff, Grey Dresie, J. Ashford Manka* and *Dean L. Lachenmeyer,* deputy county attorneys, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action to enjoin the collection of taxes because of the alleged excessive valuation of the property for taxation purposes. Defendants' demurrer to plaintiffs' evidence was sustained and plaintiffs have appealed.

Three pieces of business property situated in Wichita, Sedgwick county, are involved, but since the legal question to be determined, as applied to each of them, is the same we need state the facts only as applied to one. In the petition it is alleged the Miller Investment Company owned certain described real property which the evidence discloses was improved and used as a superservice filling station. It was alleged that about March 1, 1938, the county assessor and his deputy placed a valuation of $16,410 on the real estate and $7,700 on the improvements, making a total of $24,110; that at the time they knew the valuations so fixed were not the actual or true valuations of the real estate or improvements in money, but knew, or by the exercise of ordinary prudence or inquiry should have known and could have learned, that the value of the real estate did not exceed $6,500 and the improvements thereon did not exceed $5,000, or a total of $11,500; that had they endeavored to ascertain the facts concerning the true value of the property they would have ascertained at the time of the assessment, or for the years 1936 and 1937, it had not earned to exceed six percent on a value of $11,500; that by their assessment they fixed the valuation at more than double the true value in money of the property, and that the valuations so placed upon the property were arbitrary, capricious and unlawful and made without a proper regard for the rights of the plaintiffs, and that the same constituted a fraud on plaintiffs. It was further alleged that plaintiffs endeavored to have a corrected return and on failing to do so appealed to the county board of equalization, and failing to get desired relief they appealed to the state tax commission, where they also failed to get the desired relief. In the prayer they ask the court to determine the true value of the property in money and fix the amount of tax which is equitable and right based on a proper valuation of the property. In an amendment to the petition it was alleged that the facts previously pleaded are in violation of the constitution of the United States, and each of its provisions, and especially of section 1 of the fourteenth amendment thereof, in that the property is being taken without due

process of law, and further that the facts pleaded in the petition are in violation of our state constitution, and especially article 11, section 1.

The answer admitted formal matters, also admitted an assessment had been made in a sum stated in the petition, and denied other pertinent allegations of the petition. The record does not show that a reply was filed.

Plaintiffs' evidence pertaining to the proper method to be used in the valuing of real property for the purpose of taxation is fairly well summarized by a quotation in appellants' brief from the testimony of one of the witnesses, as follows:

"Q. How do you arrive at it? A. There is only one way if you are fair with the owner of the building; tax him on what the building makes. If you do it any other way you are cheating him. Q. Do you mean the net return on that property? A. Yes, sir; what the building earns him. Q. Do you take into consideration, in addition to what it earns him, the market value, if any, in the community for the property? A. Well, the market value is what it will earn. That's the only argument you have got in selling a building; it will earn so much money. Q. When you say earnings; what rate of return on the invested capital? A. All the way from five to six percent; four and a half is pretty good now. Q. Based on that you would capitalize that to arrive at the assessed value? A. Yes, sir."

The testimony of other witnesses for plaintiffs on this point was to the same effect, namely, that the value of such property could be determined only by its net return. Most of them testified the net return should be six percent of the value of the property. One of them testified he would like to have a net return of ten percent of the value, but that it should not be less than six percent. Some witnesses were asked if in reaching their conclusion as to the value of the property for the purpose of taxation they had considered other methods, or "all known methods" of ascertaining the value of property, and answered in the affirmative, but also testified that after all these things were considered the only true test was the net return to the owner. Indeed, it would appear this action was brought for the purpose of having it judicially determined that the only method of determining the value of well-managed business property for the purpose of taxation is upon the net income of the property to the owner, and that such income should be six percent, or approximately six percent, of such value. We decline to make such an adjudication.

Excerpts from our pertinent statutes read·

"The deputy assessor from actual view, from consultation with the owner or agent thereof if expedient, and from such other sources of information as are within his reach, shall determine as nearly as is practicable the actual value in money of all taxable real property within his township or city, as the case may be. . . ." (G. S. 1935, 79-411.)

"Each parcel of real property shall be valued at its true value in money, the value thereof to be determined by the assessor from actual view and inspection of the property. . . ." (G. S. 1935, 79-501.)

"All property, real or personal, shall be valued at its actual value in money. . . ." (G. S. 1935, 79-1406.)

The county assessor and his deputy testified that they followed these statutes to the best of their ability, and that they did not make the net return to the owner the sole basis of the valuation of the property; indeed, that in many instances they did not investigate or know the amount of such net return. It will be observed that our statutes nowhere make the net return to the owner the sole basis of valuation, or necessarily a basis at all. "If expedient" the deputy assessor should counsel with the owner or agent of the property. If such consultation were made the statute does not require that the deputy assessor ascertain the income, or the net income, of the property, and certainly does not require that to be made the basis, or the sole basis, of determining the value of the property for the purposes of taxation.

The allegations in plaintiffs' petition charging defendants acted arbitrarily, capriciously, and in a manner to constitute a fraud upon plaintiffs is supported only by evidence tending to show that the assessor and his deputy did not follow the theory of plaintiffs respecting the method, or the sole method, of determining the value of their property, but, on the other hand, that they followed our statutes, above quoted, to the best of their knowledge and ability. This was their duty. (*Hanzlick v. Republic County Comm'rs*, 149 Kan. 667, 88 P. 2d 1111.) We think it clear plaintiffs' allegations in these respects were not sustained by the evidence. Courts are not charged with the powers and duties of assessors. (*Finney County v. Bullard*, 77 Kan. 349, 94 Pac. 129.) Neither do we see any reason for holding that the conduct of any of the defendants violated plaintiffs' rights under the constitution of the United States or the constitution of this state.

We find no error in the record. The judgment of the court below is affirmed.