No. 40,425 and No. 40,426

E. T. ANDERSON, *Appellant*, v. A. G. DUNN, CHARLES J. KOHLER, T. W. KASTEN, The Board of County Commissioners and Board of Equalization of Morris County, Kansas; ROY N. McCUE, JOHN L. McNAIR, and IRA C. WATSON, The State Commission of Revenue and Taxation and The State Board of Equalization of the State of Kansas; C. C. HUNTER, County Clerk and County Assessor of Morris County, Kansas; and LELAND B. GARNER, County Treasurer of Morris County, Kansas, *Appellees.*

(308 P. 2d 154)

Opinion

filed March 9, 1957.

*Russ B. Anderson,* of McPherson, argued the cause, and *Dale A. Spiegel,* of Emporia, and *Archie T. MacDonald,* of McPherson, were with him on the briefs for the appellant.

*Blanton F. Messick,* of Topeka, argued the cause, and *Michael A. Barbara,* of Topeka, and *David H. Heilman,* of Council Grove, were with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: These actions for injunctive relief were consolidated on appeal.

In case No. 40,425 the appeal is from orders of the trial court sustaining separate demurrers of the board of county commissioners of Morris county, the county assessor and the county treasurer; and the state commission of revenue and taxation, to appellant's amended and second amended petitions seeking to enjoin the collection of taxes assessed against land on the ground of fraud. The final determination in case No. 40,425 will also govern and determine the ultimate outcome of case No. 40,426, which is an appeal taken from an order of the trial court sustaining

a demurrer to a petition seeking relief from a subsequent assessment, levy and payment under protest involving the same land.

We shall refer to the board of county commissioners (and to the county board of equalization) as the *board;* to the state revenue and taxation commission (and to the state board of equalization) as the *commission;* to appellant as the *taxpayer;* to C. C. Hunter, county clerk and county assessor as the *assessor;* and to Leland B. Garner, county treasurer, as the *treasurer.*

It is admitted by the parties that the only question before us is whether there are sufficient allegations in the amended and second amended petitions (hereafter generally referred to as the petition) to constitute fraud on the part of the officials involved so as to justify the injunction sought by the taxpayer to enjoin the collection of part of his tax.

The petition (case No. 40,425) in the first cause of action set out the legal description of 3,133 acres of land in Morris county; the petition alleged it is the responsibility of the county and state to apportion equitably and to spread government costs through taxation, which duties defendants failed, neglected and refused to perform, thereby causing this taxpayer's burden to be proportionally larger than that of his neighbors; the board and assessor knew or were charged with knowledge of county records pertaining to assessed valuations and facts from viewing the physical characteristics of land belonging to the taxpayer, as well as adjoining lands, so they had actual knowledge that taxpayer's land had no greater cash market value than did adjoining lands; the board and the assessor, notwithstanding this knowledge, failed, neglected, and refused to assess taxpayer's land at the same or a lower figure than that of adjoining lands; *these facts were so clear and irrefutable that reasonable minds could not differ thereon* (our emphasis) and had the board and the assessor employed the discretion and logic of which they were capable, taxpayer's land would not have a greater assessed valuation than adjoining land thereby in effect making taxpayer's land have a higher cash market value not on an equal basis with adjoining lands; the action of the board and the assessor was so capricious, arbitrary, and oppressive as to amount to fraud; these facts were shown by *unrefuted and irrefutable sworn testimony* (our emphasis) in a hearing before the board and on appeal to the commission, but both failed, neglected, and refused to exercise such discretion, reasoning and logic as

was their legal duty to exercise, which discretion would have led them to the inescapable conclusion that the assessed valuation of taxpayer's land was too high; their action was so oppressive, capricious and aribtrary as to amount to fraud and constituted a planned and unconscionable discrimination against the taxpayer by placing an undue tax burden on him which caused him to pay more than his just and proportionate share of taxes in Morris county; such misfeasance, malfeasance, refusal to perform legal duties, etc., were made with the design of injuring and discriminating against the taxpayer.

The petition further alleged that taxpayer's land is pasture, not tillable, and of less value than certain described adjoining land, part of which is good tillable bottom land that has a cash market value equal to twice that of the taxpayer's land and yet it was assessed at a lower cash value. These facts were known to both the board and the commission and were *unrefuted and irrefutable.* The same facts were true of other lands not directly adjoining in the same taxing unit as were true of the adjoining lands.

It was further alleged that appeals were made to the county board of equalization in May, 1954, and May, 1955, which board's conduct was so oppressive, arbitrary and capricious as to amount to fraud in that it was contrary to indisputable evidence; the denial of relief was appealed to the commission as a board of equalization on June 10, 1955, hearing was had on August 11, 1955, and said action was still pending; both equalization boards, the assessor, and the treasurer acted in violation of the spirit, letter and express legislative intent of the law in assessing taxpayer's land at the high rate and by failing, neglecting, and refusing to lower its assessed valuation to equalize the assessment with that of other similar land in the same taxing district—all to the taxpayer's irreparable damage.

After making material allegations of the first cause of action a part thereof, the taxpayer, in his second cause of action, sought to recover $152.24 for the last half of 1954 taxes and $152.24 for the first half of 1955 taxes—all paid under protest—and further alleged that timely application for relief was taken to the commission which arbitrarily, oppressively and capriciously failed and refused to grant such relief and that the aforestated sums should be paid back to the taxpayer.

The board and the commission, acting as equalization boards, and the assessor and treasurer demurred to the petition on the grounds

that it did not state facts sufficient to constitute a cause of action; and the board, the assessor and the treasurer set out the further ground that another action was pending before the same parties for the same cause of action.

The amended petition to which similar general demurrers were lodged and sustained, was substantially the same as the second amended petition except that therein it was alleged as an additional fact in keeping with other lands of the taxing unit, that taxpayer's land should have a tax valuation of approximately $17.00 per acre while in fact it was valued at $21.00 per acre.

We must first look to the applicable statutory provisions:

". . . And any person feeling aggrieved by the action of the county board of equalization may . . . appeal to the *state board of equalization* for a determination of such grievance. . . ." (G. S. 1949, 79-1409.)

". . . In case it shall appear after the assessment . . . that any particular description of real estate has been placed upon the tax roll for such year in an amount in excess of its actual value in money, it shall be the duty of the *county assessor* and the *county board of equalization* . . . to reduce the assessed value of any and all such descriptions of real estate to their actual value in money for the purposes of taxation. . . ." (G. S. 1949, 79-1412.) (Our emphasis.)

To follow the contention of defendants the only justification for equalization would be where, as provided by statute, property is placed on the tax rolls for an amount in excess of its actual value in money, but we must go further in considering the question presented.

The true value in money of real property is obtained by the assessor from actual view and inspection of property. (G. S. 1949, 79-501.) The board shall make such changes in the assessment of property as shall be necessary in order to secure an assessment of all property at its actual value in money and shall be governed by a provision that the board shall equalize the valuation of the several assessment districts in the county, either by adding to or deducting from the value of real estate such percentage as may be necessary in order to make a just and equitable equalization among the assessment districts of the county so that all property in the county shall be equally assessed at its actual value in money. (G. S. 1949, 79-1602, *Third.*)

The foregoing statutes are plain, clear and unambiguous and set out the duty of the assessor and the manner in which the true money value of real property is to be obtained. They also set out

the duties of both the county and state equalization boards. While it was early said by this court that the determination of these boards, when fairly and honestly made, is final and the courts will not interfere so as to act in the capacity of an assessor or substitute their judgment for that of the boards of equalization (*Finney County v. Bullard*, 77 Kan. 349, 354, 94 Pac. 129), in case the actions of the assessor and the boards of equalization amount to actual fraud or where those actions are so capricious, arbitrary, or oppressive as to amount to constructive fraud, then the only avenue open to the aggrieved party is through some extraordinary legal remedy such as mandamus, quo warranto, or injunction. (*In re Chicago, R. I. & P. Rly. Co.*, 140 Kan. 465, 468, 37 P. 2d 7.)

In *Eureka B. & L. Ass'n v. Myers*, 147 Kan. 609, 613, 78 P. 2d 68, *capricious* is defined as "changing apparently without regard to any laws;" *arbitrary* is defined as being "without adequate determining principles; not done or acting according to reason or judgment;" and *oppressive* is defined as "harsh, rigorous, or severe."

If a public official's actions are tainted with fraud, they are open to equitable inquiry. (*State, ex rel., v. Mowry*, 119 Kan. 74, 78, 237 Pac. 1032.)

We are next met with the proposition as to whether the taxpayer's petition sufficiently alleged the necessary elements to entitle him to the injunctive relief prayed for. In considering this we must bear in mind the rule of liberal construction applicable to pleadings attacked by demurrer. (*Bennett v. City of Kansas City*, 177 Kan. 234, 277 P. 2d 649; *Clark v. Hildreth*, 179 Kan. 243, 293 P. 2d 989.)

The petition has been summarized and it shows there was no allegation that taxpayer's land was in a different classification from other land but rather that it was in the same class as adjoining land. The assessor and the boards were given evidence which was *unrefuted* and *irrefutable* but no correction of the capricious, oppressive, and arbitrary assessment was made which makes this case distinguishable from those where the classification was different, or the boards had made some adjustment. (*Finney County v. Bullard*, supra; *Eureka B. & L. Ass'n v. Myers*, supra; *Hanzlick v. Republic County Comm'rs*, 149 Kan. 667, 88 P. 2d 1111.)

We are concerned only with the sufficiency of the petition in this particular case, and we are not going to anticipate what questions any subsequent pleadings, or the evidence in support of the pleadings, will produce. Whether taxpayer will or will not be able to

obtain the relief sought is for future determination. (*Boettcher v. Criscione,* 180 Kan. 39, 46, 299 P. 2d 806.)

A very similar situation was presented to this court in *Associated Rly. Equipment Owners v. Wilson,* 167 Kan. 608, 208 P. 2d 604, which was ultimately determined upon a demurrer to the evidence notwithstanding the fact that demurrers had been filed both to the petition and the amended petition. This would at least infer that the trial court in that case properly overruled the demurrers to the petition and the amended petition without this court definitely so holding, which would be in harmony with what has just been said herein in regard to our not determining at this time something that might come up for future determination.

We are not ignoring the claims of the officials here involved, but the question of the sufficiency of the second cause of action pertaining to repayment of taxes paid under protest is governed by what has already been stated herein. Likewise, we have considered the contention of those officials that a general averment of fraud, absent the pleading of facts, is not sufficient to plead a cause of action thereon, but upon the admission of the taxpayer and the conclusion that this is a question of the allegations amounting to constructive fraud, we think it unnecessary to treat in detail their contention concerning actual fraud.

We conclude it was error on the part of the trial court to sustain the demurrers to the second amended petition in view of the allegations contained therein. The judgment should be reversed and it is so ordered.